UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Little Italy Development, LLC, | ) | CASE NO. 1: 11 CV 112 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Chicago Title Insurance Co., et al., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff Little Italy Development LLC's Motion to Compel Production of Documents (Doc. 36). This is an insurance coverage dispute. For the reasons that follow, the motion is GRANTED in PART and DENIED in PART.

**FACTS**

Only those facts necessary for a resolution of the instant motion are set forth herein.

Plaintiff, Little Italy Development LLC ("LID"), brings this lawsuit against defendants, Chicago Title Insurance Company and Fidelity National Title Group, Inc. (collectively,

1

"Chicago Title")[1]. LID purchased a title insurance policy from Chicago Title.

On July 9, 2009, Little Italy Preservation Partners sued LID regarding the use of an easement over LID's property. It appears that the complaint in that matter contained seven claims. LID tendered the defense of the litigation to Chicago Title pursuant to the policy. Chicago Title agreed under a reservation of rights to defend only count six, which alleged a public prescriptive easement.

On November 17, 2010, Chicago Title informed LID that, under Ohio law, it had no duty to provide a complete defense

LID issued discovery requests to Chicago Title. Chicago Title asserted the attorney-client privilege and work-product doctrines in response to certain requests. LID now moves the Court to compel responses to the requests and Chicago Title opposes the motion.

## ANALYSIS

1.  Attorney-client privilege

LID argues that the Ohio Supreme Court's holding in *Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154 (Ohio 2001), creates an exception to the attorney-client privilege. According to LID, the Ohio Supreme Court concluded that "claims file materials that show an insurer's lack of

---

[1] Chicago Title Ins. Co. argues that this motion cannot be granted as to Fidelity National Title Group, Inc. ("Fidelity") as LID never sent a deficiency letter to Fidelity. This Court rejects the argument, as defendants' response to the deficiency letter provides, "[t]his acknowledges receipt of your letter dated July 1, 2001, in which you claim that discovery responses of Chicago Title Insurance Company *and Fidelity National Title Group, Inc.* (collectively "Chicago Title") are deficient." This demonstrates that the parties intended to treat the alleged deficiencies in the discovery requests as related to *both* parties. Accordingly, Fidelity's argument is rejected.

good faith in denying coverage are unworthy" of attorney-client privilege protection. In response, Chicago Title argues that the Ohio legislature's amendment to O.R.C. § 2317.02 overrules the holding in *Boone* and requires LID to make a *prima facie* showing of bad faith before the exception to the attorney-client privilege may be invoked.

Ohio law applies in analyzing the parties' dispute as to the application of the attorney-client privilege. Under Ohio law, the attorney-client privilege is "governed by both common law and statute." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 440 (6th Cir. 2009). In *Boone*, the Ohio Supreme Court opined as follows:

> ...[W]e hold that in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage. At that stage of the claims handling, the claims file materials will not contain work product, *i.e.*, things prepared in anticipation of litigation, because at that point it has not yet been determined whether coverage exists.

*Boone*, 744 N.E.2d at 158.

After the issuance of *Boone*, the Ohio legislature amended O.R.C. § 2317.02(A), to include subpart (2). The statute reads, in relevant part:

> The following persons shall not testify in certain respects:
>
> (A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client. However, if the client voluntarily testifies or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject.
>
> ∗∗∗
>
> (2) An attorney, concerning a communication made to the attorney by a client in that relationship or the attorney's advice to a client, except that if the client is an insurance company, the attorney may be compelled to testify, subject to an in camera inspection by

3

>a court, about communications made by the client to the attorney or by the attorney to the client that are related to the attorney's aiding or furthering an ongoing or future commission of bad faith by the client, if the party seeking disclosure of the communications has made a prima facie showing of bad faith, fraud, or criminal misconduct by the client.

It is well-settled that subsection (A)(1) does not apply to the production of documents.  *In re Professionals*, 578 F.3d at 440-41.  (*citing Grace v. Mastruserio,* 2007 WL 2216080 at *3 ("A plain reading of the statute clearly limits the statute's application to cases in which a party is seeking to compel testimony of an attorney...–as opposed to cases where a party is seeking to compel production of documents.")).  Rather, the provision creates a testimonial privilege preventing attorneys from testifying in certain respects.  See, *State ex rel Leslie v. Ohio Hous. Fin. Agency*, 824 N.E.2d 990, 996 ("R.C. 2317.02(A), by its very terms, is a mere testimonial privilege precluding an attorney from testifying about confidential communications.").

The Court finds that a plain reading of the language in subsection (A)(2) compels the same result.  Like the language in subpart (A)(1), the language contained in subpart (A)(2) is directed at persons "testifying."  Moreover, the exception to the statute, which requires the party seeking disclosure of the communication to make a *prima facie* showing of bad faith, applies in determining when an "*attorney may be compelled to testify.*"  Thus, on its face, the statutory provision creates a testimonial privilege.

Chicago Title points out that the explanatory notes to the amendment provide that "the common law established in *Boone*..., is modified accordingly to provide for judicial review of the privilege."  According to Chicago Title, the explanatory notes clarify that *Boone* is no longer good law and that prior to obtaining privileged documents, LID must make a *prima facie* showing of bad faith.  This Court disagrees.  As an initial matter, the Court finds that the

4

statutory language is clear on its face.  Therefore, resort to the explanatory notes is not proper.  Moreover, the Court finds that the explanatory notes can be read in conjunction with *Boone*.  *Boone* created an "exception" to the attorney-client privilege.  The amendment to O.R.C. § 2317.02(A) provides that the *Boone* exception cannot be applied to the testimonial privilege.  Thus, while the exception may apply to the production of documents, it cannot be applied to the testimonial privilege absent a *prima facie* showing of bad faith.  Accordingly, the Court finds that the amendment to O.R.C. § 2317.02(A) did not overrule *Boone*.  Because LID seeks the production of documents, as opposed to attorney testimony, O.R.C. § 2317.02(A)(2) does not apply.[2]

Chicago Title also purports to rely on *In re Professionals*.  According to Chicago Title, by implication, the Sixth Circuit concluded that O.R.C. § 2317.02(A)(2) must apply to documents.  In *In re Professionals*, the Sixth Circuit expressly concluded that O.R.C. § 2317.02(A) applies only to attorney testimony.  The court went on to address whether the amendment to that statute, *i.e.*, O.R.C. § 2317.02(A)(2) applied to the facts of the case.  The court concluded that the events giving rise to the lawsuit occurred before the amendment and that the amendment could not be applied retroactively.  Accordingly, the court did not reach whether O.R.C. § 2317.02(A)(2) applies to documents.  From this, Chicago Title argues that the

---

[2] Chicago Title also relies on *Galion Community Hospital v. Hartford Life and Accident Ins. Co.*, 2010 WL 359126 (N.D. Ohio Jan. 29, 2010).  In *Galion*, the district court ruled that a movant must make a *prima facie* showing of bad faith before obtaining documents otherwise subject to the attorney-client privilege.  Other than citing to the explanatory note, the opinion contains no analysis.  For example, there is no discussion of the statutory language and the court does not address the difference between a testimonial privilege and the production of documents.

"implication...is that, if the amended statute did apply retroactively, it would apply to both confidential attorney-client communications presented in testimony or...documents.  Otherwise, the Sixth Circuit would not have had to analyze whether the statute applied retroactively."   This Court disagrees with Chicago Title's argument.  Before interpreting the scope of the statute, the Sixth Circuit first determined whether the statute even applied to the claims at issue.  To address the issue in the reverse order, *i.e.*, interpreting the scope of the statute before determining whether the statute is applicable, would often result in an advisory opinion.  This is precisely what would have happened in *In re Professionals*, as the Sixth Circuit determined that the amended statute did not apply to the case.  Thus, the Court rejects Chicago Title's argument that the Sixth Circuit implied that the amendment overrules *Boone*.  The Sixth Circuit simply did not reach the issue as the amendment had no bearing on the case.

Having concluded that *Boone* applies, LID need not make a *prima facie* showing that it is entitled to discover privileged communications.  The Court now addresses the cutoff date for determining which documents must be produced.  LID asks the Court to impose a cutoff date of September 2, 2011, the date on which Chicago Title responded to interrogatories denying that Count 6 in the underlying litigation is a covered claim.  In the alternative, LID argues that the *Boone* cutoff date should be November 17, 2010, the date on which Chicago Title notified LID of its position that insurers are not obligated to provide a "complete defense."  On the other hand, Chicago Title claims that the cutoff date should be August 24, 2009, the date on which Chicago Title sent its initial denial letter regarding all claims other than Count 6.

Upon review, the Court finds that the cutoff date for purposes of *Boone* discovery is August 24, 2009.  On that date, Chicago Title sent LID a denial letter, which provides in part as

6

follows:

> I am in receipt of the Plaintiff's Complaint.  After a careful review of the pleadings, I find the following:
>
> Counts I through IV and VII of Plaintiff's Complaint specifically concern issues surrounding the 1951 Easement or prescriptive easements appurtenant to Plaintiff....
>
> [Paragraphs 12 and 15 contained in the Exceptions to Schedule B] exclude from coverage any loss resulting from a judgment rendered against the Insured under Counts I through IV and VII of Plaintiff's Complaint.  Exception no. 15 excludes from coverage rights of private parties to use East 119 th Street, which would apply to Plaintiff, since it is a private adjoining landowner.  Count V concerns a judicial determination post-policy that vacated East 119 th Street has become "public" by common law dedication.  This determination, as noted above, would be post-policy and excluded pursuant to Exclusions from Coverage paragraph 3(d) for defects, liens, encumbrances, adverse claims, or other matters attaching or created subsequent to Date of Policy.  For these reasons, Chicago [Title] denies Insured's tender of defense on Counts I through V and VII.
>
> Chicago [Title] accepts tender of defense for Count VI ("Covered Count") pursuant to the Terms and Conditions fo the Policy, pursuant to a reservation of rights more fully set forth below.
>
> Chicago [Title] reserves the right to deny coverage or indemnity for any loss related to a judgment rendered in Plaintiff's favor for Count VI of the Complaint....

The Court finds that this letter constitutes the "denial of coverage" for purposes of *Boone*.  In *Boone*, the court reasoned that:

> [T]he lack of good faith in determining coverage involves conduct that occurs when assessment of coverage is being considered.  Therefore, the only attorney-client privilege and work-product documents that would contain information related to the bad faith claim, and, thus, be unworthy of protection, would have been created prior to the denial of coverage.

*Boone*, 744 N.E.2d at 158.

LID argues that *Boone* has been applied to cases in which the "insured's claim for bad faith goes beyond the traditional bad faith denial of coverage claim."  LID relies on *Scotts Company v. Liberty Mut. Ins. Co.*, 2007 WL 1500899 (S.D. Ohio May 18, 2007).  In *Scotts*, the

insured contacted its insurer regarding environmental coverage purportedly covered by insurance policies issued in the mid-1950s to the mid-1960s. The insurers denied that such policies existed and eventually entered into a "complete policy buyout," pursuant to which the insured obtained far less compared to what coverage would have afforded. Later, the insured alleged that it discovered evidence of insurance coverage during the relevant time and that the insurers intentionally deceived the insureds regarding the existence of such coverage. The court held that *Boone* should be applied based on the "unique facts of the each case." Given that the case before the court in *Scotts* was an "atypical" bad faith claim, which reached far beyond "the decision to deny coverage," the court allowed discovery of material up until the date of the policy buyout agreement.

LID also relies on *Unklesbay v. Fenwick*, 855 N.E.2d 516 (Oh. Ct. App. 2006). In *Unklesbay*, the insured contacted his insurer and made a claim for uninsured/underinsured motorist's coverage. The insurer never responded to the request and the insured sued and ultimately asserted a claim for bad faith. The insurer argued that it never denied coverage and, as such, by definition no *Boone* materials could exist. The court rejected this theory and concluded that the basis for the bad faith claim was not the insurer's decision to deny coverage. Rather, the bad faith claim stemmed from the insurer's complete failure to process, evaluate, or investigate the claim in the first place. The court reasoned that *Boone* could be extended to cover bad faith claims based, not on the decision to deny coverage, but on the failure to address a claim at all.

Upon review, the Court finds that *Scotts* and *Unklesbay* do not support LID's position as the facts of those cases are simply not present. Unlike here, *Scotts* involved the allegation that

the insurer deceived its insured about the very existence of coverage. *Unklesbay* involved a complete failure on the part of the insurer to address its insured's claim. In this case, Chicago Title expressly addressed LID's claims in the denial letter dated August 24, 2009. Chicago Title denied coverage for all counts other than Count 6. With regard to Count 6, Chicago Title indicated that it would provide a defense subject to a reservation of rights. The parties do not dispute that such a defense was, in fact, provided by Chicago Title. Although LID complains that Chicago Title improperly handled the matter after denying coverage, *Boone* creates an exception to the attorney-client privilege for "conduct that occurs when assessment of coverage is being considered." Ohio courts have broadened this exception for situations falling outside the scope of this provision where coverage is atypically considered. In this case, LID asks the Court to extend this exception even further–to cover conduct occurring after the denial of coverage in a run of the mill insurance coverage case. On the facts of this case, the Court declines to do so. Here, LID presented its claim for defense coverage to Chicago Title. Chicago Title responded to LID's request by denying coverage. Although LID continued with its efforts to convince Chicago Title that coverage should be afforded, the Court finds that expanding the exception to the attorney-client privilege would exceed the mandate in *Boone*. To accept LID's position would essentially negate the existence of the attorney-client privilege in all bad faith cases, as most insurers stand by their initial denial of coverage.

The Court thus rejects LID's claim that the *Boone* cutoff date should be September 2, 2011. That date, which is the date on which Chicago Title responded to LID's second set of discovery requests in *this* litigation, is just days before the filing of this motion to compel. According to LID, this is the first time Chicago Title converted its reservation of rights letter into

9

a denial of coverage with respect to Count 6.  LID's suggested date ignores the fact that the thrust of this litigation is Chicago Title's alleged failure to provide a complete defense for all of the claims, regardless of whether underlying coverage exists.  The vast majority of the coverage issues were addressed in the August 24, 2009, denial of coverage letter.

The Court further rejects LID's alternative date, *i.e.*, November 17, 2010, the date on which Chicago Title notified LID of its position that insurers are not obligated to provide a "complete defense."  On August 24, 2009, Chicago Title informed LID that it would provide a defense to only one of the claims asserted against LID.  Thus, it was apparent that Chicago Title did not believe it was obligated to provide a "complete defense."  While the November 17, 2010 letter may have clarified Chicago Title's position, it is undisputed that coverage was denied on August 24, 2009.  Accordingly, the Court finds that, for purposes of *Boone*, LID is entitled to all claims file documents created on or before August 24, 2009, the date on which Chicago Title denied coverage.

Upon review of the revised privilege log (ECF 36-7), it appears that none of the claims file documents prepared prior to August 24, 2009, were withheld based on the attorney-client privilege.  As Chicago Title need not produce any document created after August 24, 2009 and withheld based on the attorney-client privilege, there are no documents to produce based on *Boone*.

2. Work-product doctrine

Unlike the attorney-client privilege, the work-product doctrine is governed by federal law.  *See, In re Professionals Direct*, 578 F.3d 432, 438 (6th Cir. 2009)(noting that the work-product doctrine is a procedural rule and, as such, federal law will govern in a diversity case).

10

Federal Rule of Civil Procedure 26(b)(3) protects from disclosure "documents and tangible things that are prepared in anticipation of litigation...by or for another party or its representative."

> To determine whether a document has been prepared 'in anticipation of litigation,' and is thus protected work product, we ask two questions: (1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable.

*In re Professionals*, 578 F.3d at 439.  The burden is on Chicago Title to show that "anticipated litigation was the driving force behind the preparation of each requested document." *Id*. (Internal citations and quotations omitted).

LID argues that the privilege log provides an insufficient basis to determine whether the work-product doctrine protects documents from disclosure.  Specifically, LID claims that it is not possible to tell whether a particular document was prepared "in anticipation of litigation."  As such, LID asks the Court to conduct an *in camera* review of the documents for which Chicago Title claims work-product protection.  In response, Chicago Title cites a case from the Southern District of Indiana in which the court opined that documents created after the denial of coverage are "presumed protected" by the work-product doctrine.

Upon review, the Court finds that an *in camera* review of the documents is necessary.  *See, In re Professionals Direct*, 578 F.3d at 439 (noting that "whether the documents at issue...were in fact prepared in anticipation of litigation can only be determined from an examination of the documents themselves and the context in which they were prepared").  Even if the Court "presumed" that the documents were protected, the Court finds that the more prudent course is to analyze the documents and independently determine whether the work-product

11

doctrine applies.  As such, Chicago Title must produce all documents on the privilege log for which only the work-product doctrine is invoked.  To the extent Chicago Title asserted both the attorney-client privilege and work-product doctrine for documents created after August 24, 2009, these documents need not be produced.  As set forth above, no exception to the attorney-client privilege exists with respect to these documents and thus they are protected from disclosure on that basis.[3]  The Court need not determine whether they are also protected from disclosure under the work-product doctrine.  Accordingly, Chicago Title must produce to the Court the following documents from the privilege log: Docs. 2, 7, 13, 16, 29, 38, 43, 46-52, 54, 58, 59, 125-128, and 131.  The documents must be produced on or before October 26, 2011.

    3.  Other deficiencies

        a.  Request No. 17

LID asks this Court to order Chicago Title to respond "more fully" to Request for Production No. 17.  The request and the response are as follows:

> REQUEST NO. 17: All documents referring or related to any practice or policy of Chicago Title to decline to defend all claims in a lawsuit against your insured when at least one of the claims in the suit is a covered claim.
>
> RESPONSE: ....To the extent this request seeks non-privileged documents created and

---

[3] Although LID generally asks that the Court "review *in camera* all documents Chicago Title is currently withholding that may cast light on its bad faith [claim]," LID does not point to any particular document set forth in the privilege log for which it claims the attorney-client privilege was wrongly invoked.  Rather, LID rests with its argument that the attorney-client privilege is not applicable.  Accordingly, the Court finds that it need not conduct an *in camera* review to determine whether Chicago Title improperly relied on the attorney-client privilege as the privilege log sets forth sufficient detail and LID fails to offer any argument to the contrary.

>maintained in the context of Chicago Title's normal role as title insurer and not in anticipation of litigation, Chicago Title has no such documents aside from the title policy itself, which Chicago Title will produce.  It is possible that individual employees of Chicago Title have published articles concerning this subject.  Chicago Title, however, has no knowledge whether such material exists, and even if it does exist, Chicago Title does not collect or maintain such material.  Further, if such material exists, it would be equally available to LID as it would be Chicago Title.

LID argues that the parties corresponded concerning the meaning of the phrase "practice or policy," and that Chicago Title's response to this request is too narrow.  As such, Chicago Title asks the Court to order LID to supplement its response to state affirmatively that it has looked for documents relating to a policy, practice, guideline, or operating procedure regarding the complete defense issue.  Chicago Title argues that its response is complete on its face and that the Court should not grant the relief LID requests.

Upon review, the Court agrees with Chicago Title.  The response is complete on its face and LID offers nothing to suggest that Chicago Title narrowly interpreted the definition of "practice or policy."  To the contrary, the response not only identifies the title policy, but also discusses the fact that employees may have written articles on the subject.  There is nothing on the face of the response suggesting that it is incomplete.  Moreover, the Court has reviewed the correspondence cited by LID and finds nothing suggesting that the response should be supplemented.  Accordingly, LID's request is denied.

>b.  Request No. 21

In Request No. 21, LID seeks "all documents related to Chicago Title's approval or denial of claims made by similarly situated insureds."  Chicago Title objected on the grounds that the request is unduly burdensome and seeks irrelevant information.  During the meet-and-confer, LID offered to narrow the scope of the Request to similarly situated insureds in Ohio.

According to Chicago Title, the request, even if limited to Ohio insureds, is unduly burdensome. Chicago Title argues that it would be required to search through all of its files in order to determine whether an insured made a claim under Ohio law.  Chicago Title claims that, to the extent the documents are even relevant, the burden outweighs any usefulness of the discovery as the "great majority of [the documents] have no relationship to the subject matter."

Upon review, the Court finds that Chicago Title need not respond to this Request as the burden outweighs the benefits of the discovery.  Although "similarly situated insured" is defined as any insured having the same policy language who demanded a complete defense where at least one but fewer than all claims were covered under the insured's policy, the request is not limited to the "complete defense" issue.  Rather, the request seeks *all* documents related to *all* claims of similarly situated insured.  Thus, the request seeks coverage determinations other than the coverage claims at issue in this case or  "complete defense" claims, so long as the insured meets the definition of "similarly situated insured."  LID generally argues that the documents are relevant to its bad faith claim.   These documents, however, would have no bearing on the issues in this lawsuit, including LID's bad faith claim.  Moreover, Chicago Title would have to search through every single claim file in order to determine whether a particular insured even meets the definition of "similarly situated insured."  This would involve not only comparing the policy language at issue, but also researching the particulars of every single claim.  As Chicago Title points out, limiting the request to Ohio insureds would require it to conduct an initial sweep in any event.  In all, the Court finds that the burden on Chicago Title to search all of its claim files outweighs any potential relevancy of the documents.  Accordingly, LID's request is denied.

         c.      Request No. 22

In Request No. 22 LID, seeks "all documents related to the financial impact of Chicago Title's delays in handling and/or responding to claims."  Chicago Title objected to this request.  LID later clarified that it is seeking "information relating to the financial benefit Chicago Title gains from its practice of repeatedly transferring claims files and failing to respond to claims and status inquiries made by its insureds."  Chicago Title argues that LID's "clarification" demonstrates that the objection is valid as the "clarification" is vague, overly broad, argumentative, based on a false predicate, and not proffered to discover relevant information."  It appears that Chicago Title indicated that it did not understand the request and, alternatively, it possesses no responsive documents.  In its briefing, Chicago Title indicates that it "stands by its initial objection."

Upon review, the Court finds that LID's request must be denied.  The Court agrees with Chicago Title that the request is not clear and imposes an obligation to provide discovery based on what Chicago Title finds to be a "false predicate."  Since Chicago Title claims that it does not "engage in a practice of unwarrantedly transferring files of delaying its response to claimants," it would follow that no documents regarding any financial impact would exist.  Even so, Chicago Title indicated in its response letter that "to the extent LID is asking whether there are documents reflecting an intentional decision to delay claims for a financial benefit, none exist."  The Court finds that Chicago Title's response is sufficient.  Accordingly, LID's request is denied.

**CONCLUSION**

For the foregoing reasons, LID's motion is GRANTED in PART and DENIED in PART.  Chicago Title must produce the documents identified in this Order for an *in camera* review on or

before October 26, 2011.

       IT IS SO ORDERED.


                                            /s/ Patricia A. Gaughan
                                            PATRICIA A. GAUGHAN
                                            United States District Judge

Dated: 10/17/11